**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

REY A.,                                         Case No. 26-CV-2287 (NEB/JFD)

    Petitioner,

v.                                              **REPORT & RECOMMENDATION**

TODD BLANCHE, MARKWAYNE
MULLIN, TODD M. LYONS, DAVID
EASTERWOOD, and ERIC
TOLLEFSON,

    Respondents.

Petitioner Rey A. A. F. has filed a Petition for Writ of Habeas Corpus (Dkt. No. 1), pursuant to 28 U.S.C. § 2241. That petition has been referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. Petitioner claims that he is being unlawfully detained in violation of his Fifth Amendment right to Due Process, s*ee Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent"), and his Fourth Amendment right to be free from unreasonable seizures. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) ("'[T]he people' protected by the Fourth Amendment … refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of

that community."). Petitioner seeks immediate release from custody, or, in the alternative, a bond hearing on his continued detention.

## I.    **<u>Background</u>**

Petitioner is a citizen of Mexico who entered the United States in 2001, at age four, and has lived here continuously ever since. (Pet. ¶ 16, Dkt. No. 1.) From 2013 through 2021, he was a beneficiary of the Deferred Action for Childhood Arrivals ("DACA") program. (*Id*. at ¶ 18.) In 2018, Petitioner was arrested twice for driving while intoxicated, after which the government initiated removal proceedings against him. Those proceedings ended after an immigration judge granted bond. (*Id*. at ¶¶ 24–25.) After being released on bond in 2018, Petitioner submitted two applications for legal status in the United States: one for Nonimmigrant Status under the U visa program[1] and one for Advance Permission to Enter as a Nonimmigrant, both of which are still pending. (*Id*. at ¶ 26.) In 2022, the government administratively closed Petitioner's removal proceedings, given his pending U visa application. (*Id*. at ¶ 27.)

More recently, in January of 2025, in Stearns County, Minnesota, Petitioner was arrested a third time for driving while intoxicated. He posted bond for his release while that case was adjudicated. (Pet. at ¶ 28, Dkt. No. 1.) He was convicted of that offense on March 2, 2026 and sentenced to 90 days in jail, to be served on weekends. (*Id*. at ¶ 31.) Less than

---

[1] U nonimmigrant status ("U visa") is a limited visa status for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity. 8 U.S.C. § 1101(a)(15)(U). The U visa is subject to a cap of 10,000 recipients per year, and applications exceeding that cap are placed on a waiting list. 8 U.S.C. 1184(p); 8 CFR § 214.14(d).

a week later, U.S. Immigration and Customs Enforcement ("ICE") issued an immigration detainer to Stearns County requesting that the county 1) serve the Petitioner with a copy of the detainer; 2) notify ICE before releasing Petitioner from its custody; and 3) maintain custody of Petitioner for up to 48 hours beyond his anticipated release to allow ICE to assume custody. (Gov. Ex. C at 1, Dkt. No. 8-3.) In that detainer, the government stated that probable cause exists to believe that Petitioner is removable because of pending removal proceedings against him and because he "poses a risk to national security, border security, or public safety." (*Id*.) Petitioner went to the Stearns County Jail on March 20, 2026 to serve part of his 90-day sentence for driving while intoxicated. On March 22, before he could leave at the end of his weekend partial sentence, he was detained by ICE, pursuant to a Form I-200 administrative warrant for his arrest, which was dated the same day, March 22. (Gov. Ex. D, Dkt. No. 8-4.) He has been in ICE detention at the Sherburne County Jail ever since. (*See* Status Report, Dkt. No. 10.)

## II.   Analysis

Petitioner devotes most of his argument to an extended discussion of the applicability of the Fourth and Fifth Amendments to noncitizen immigrants detained by the federal government pending immigration proceedings, but he provides very little argument demonstrating how that law applies to this specific case. The government argues that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and that the relief Petitioner seeks is foreclosed by the Eighth Circuit's recent holding in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Petitioner does not contest that holding itself, but

3

"challenges the instant detention on constitutional grounds not foreclosed by … *Avila*." (Pet. at ¶ 46, Dkt. No. 1.)

Petitioner states that since being detained by ICE, he "has not received any documentation pursuant to his arrest or the basis for continued detention," (Pet. at ¶ 34, Dkt. No. 1), but the record provided by the government somewhat belies that statement. The documents provided by the government show that on the day he entered ICE custody, he was provided with the Form I-200 Administrative Warrant, finding probable cause that he was removable from the United States and that removal proceedings against him were pending. (Gov. Ex. D, Dkt. No. 8-4.) During his detention, removal proceedings have continued, including an adjudication of Petitioner's Motion for Voluntary Departure and an Order that he be "ordered removed from the United States to Mexico." (*See* Gov. Exs. E, H, Dkt. No. 8). Petitioner attests that his detention violates his Fourth Amendment right to be free from unreasonable seizures and his Fifth Amendment right to due process. The Court recommends that the Petition be granted because it finds that the government violated Petitioner's due process rights provided by the Fifth Amendment.

### A.  Fourth Amendment

"The protections of the Fourth Amendment apply to arrests of noncitizens," *U.H.A. v. Bondi*, No. 26-417 (JRT/DLM), 2026 WL 558824, at *16 (D. Minn. Feb. 27, 2026) (citing *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010)), but the Court struggles to see how Petitioner wants the Court to apply the Fourth Amendment in this case. Petitioner chiefly cites cases addressing the warrantless arrest of those subject to civil immigration detention, but he does not tie that law to the facts before the Court. The Court

can identify two potential Fourth Amendment issues to be addressed here, neither of which are clearly raised by the briefing: 1) whether the Form I-200 administrative warrant issued for Petitioner's arrest by ICE constitutes a constitutionally valid warrant for Fourth Amendment purposes; and 2) if the administrative warrant passes constitutional muster, whether it was issued after Petitioner was arrested, making his arrest a warrantless one. The first question is a legal question that has seen very little specific legal analysis by courts. The second requires the Court to determine the outcome of a factual disagreement between the parties.

1.  Adequacy of Form I-200 Administrative Warrants

There is no clear binding precedent on whether an otherwise error-free administrative warrant, typically issued as a Form I-200, is constitutionally sufficient for Fourth Amendment purposes in the civil immigration enforcement context. Many courts in this District have found administrative warrants with "facial errors" invalid. *See Jose L.B. v. Bondi*, No. 26-CV-2119 (KMM/EMB), 2026 WL 1484689, at *5 (D. Minn. Apr. 28, 2026) (collecting cases). Those facial errors include illegible signatures, a blank interpreter's signature line, an inadequate basis for probable cause, a lack of knowledge in the signatory of the facts surrounding the warrant's preparation, "not insignificant" discrepancies, significant omissions, and post-arrest warrant issuance. *Id*. None of these facial errors exist here, other than a potential issue with the timing of the issuance of the warrant, addressed below. Petitioner seems to concede that civil immigration arrests can be made on the authority of an administrative warrant and does not challenge the validity of the administrative warrant here. (See Pet. at ¶ 52 (citing *Molina v. United States Dep't*

*of Homeland Sec.*, Case No. 25-3417 (BAH), 2025 U.S. Dist. LEXIS 234930, at \*48 2025 WL 3465518 (D.D.C. Dec. 2, 2025) ("Generally, officers making civil immigration arrests must have an *administrative* warrant.") (emphasis added).)

As a general matter, the Court recommends finding that a Form I-200 administrative warrant is not a "warrant" for all Fourth Amendment purposes, under controlling caselaw. The Supreme Court has held that,

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. *Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer* engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. *When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.*

*Coolidge v. New Hampshire*, 403 U.S. 443, 449 (1971) (emphasis added). The very nature of administrative warrants supplants the role of the "neutral and detached magistrate" mandated by *Coolidge* and replaces the judge with a supervisor of the officer seeking the warrant. An I-200 administrative warrant is, in effect, a warrant that law enforcement issues to itself, the very scenario *Coolidge* forbids. The Court understands that these administrative warrants have become commonplace in immigration enforcement and that courts have generally accepted them as valid, but the Court recommends finding that the administrative warrant here nevertheless cannot constitute a warrant for general Fourth Amendment purposes.

6

In assessing similar cases, other courts have found administrative warrants to be valid in limited circumstances. In *Castanon Nava v. Dep't of Homeland Sec.*, the U.S. District Court for the Northern District of Illinois determined that ICE lacks authority to issue I-200 administrative warrants without "concurrent or prior issuance of a Notice to Appear." 806 F. Supp. 3d 823, 853 (N.D. Ill. 2025). At least three courts in this District have relied on *Castanon Nava* to find warrants invalid when no corresponding Notice to Appear was filed. *See e.g., Oscar R.R.G. v. Bondi*, Case No. 26-cv-1204 (JRT/SGE) (D. Minn. Feb. 13, 2026); *Enyer O.L.*, Case No. 26-cv-1078 (MJD/SGE) (D. Minn. Feb. 15, 2026); *Jose L.B., v. Bondi*, No. 26-CV-2119 (KMM/EMB), 2026 WL 1484689, at *6 (D. Minn. Apr. 28, 2026). Here, a Notice to Appear was issued in 2018, in the original removal proceedings, but no such Notice was issued in 2026 when the government sought to reopen removal proceedings. The first poat-2018 action in the record that shows the federal government taking action related to Petitioner is the March 7, 2026 ICE Immigration Detainer sent to the Stearns County Jail, followed by the administrative warrant and ICE arrest. (Gov. Resp. 2, Dkt. No. 7.)

Given the caselaw in this District that I-200 administrative warrants can only be issued after or concurrent with the issuance of a Notice to Appear and the procedural posture of Petitioner's removal proceedings, the Court must consider whether—where the government has reopened previously halted removal proceedings and has issued a detainer to a local jail—that detainer may serve as a substitute for the Notice to Appear (here, Gov. Exs. A and C, Dkt. Nos. 8-1 and 8-3, respectively). The Court sees merit in both conclusions. On one hand, both documents identify the subject of the removal proceedings,

his country of citizenship, and the reason why the immigration authorities seek to detain him, putting the subject on notice of the government's intent. Both are signed by deportation officers. On the other hand, the Notice to Appear is served directly on the subject of the proceedings, while the detainer is served on the state institution with custody over the subject with only a request to provide the subject with a copy. The Notice to Appear also provides slightly more detailed information about the allegations of removability, including specific statutory citations. The detainer is a checkbox form that alleges probable cause for removability. Given the novelty of this issue, the failure of the parties to raise it, and the fact that the Court recommends granting the petition on other grounds, the Court finds it unnecessary to make a recommendation on this issue in this case.

###### 2.   Warrant Issuance Timing

Assuming the administrative warrant discussed above is valid and sufficient to pass Fourth Amendment muster, at least in the civil immigration context, the question becomes whether it was issued before Petitioner's arrest. The record provided by the government shows both that an immigration detainer was provided to Stearns County shortly after his conviction for driving while intoxicated and that an administrative warrant existed and was served on Petitioner at the time of his detention by ICE. (Gov. Exs. C–D, Dkt. Nos. 8-3–8-4.) In his reply, Petitioner insists that he was not provided an administrative warrant or other document at the time of his arrest and says that the government admits as much. (Reply 2, Dkt. No. 11 (citing Resp. 2, Dkt. No. 7.)

There is a clear factual disagreement on whether the administrative warrant was physically served on Petitioner when he was arrested, but the Fourth Amendment speaks of the *issuance* of warrants, not of the *service* of warrants. U.S. Const. amend. IV. While not directly addressed by the parties, the Court concludes that the evidence shows that the I-200 administrative warrant was issued before Petitioner was arrested. Taking the immigration detainer sent to Stearns County as evidence of ICE's intent to detain Petitioner directly upon his release from Stearns County custody, the Court finds it likely that the I-200 was also issued pre-arrest. The government has provided evidence that Petitioner was being held at the Stearns County Jail on the immigration detainer issued to the county on March 7, 2026. While the detainer itself is of course not a warrant, it is circumstantial evidence tending to show that the immigration authorities planned to arrest Petitioner upon his release from the jail two weeks before they did so. Further, the administrative warrant includes a certificate that the warrant was read to Petitioner in Spanish at the time of his detention. (Gov. Ex. D, Dkt. No. 8-4.) The advance planning required and exhibited here, along with the documentation provided by the government leads the Court to conclude that the administrative warrant for Petitioner's arrest was issued before the arrest. Accordingly, the Court recommends that the Petition be denied as to Petitioner's Fourth Amendment challenge to his detention.

**B. Fifth Amendment**

Petitioner's Fifth Amendment challenge provides a much stronger basis for a bond hearing, or, if a bond hearing is not provided, his release. He argues that the Court should apply the three-factor test enumerated in *Mathews v. Eldridge* to determine whether his

9

detention violates the Fifth Amendment. 424 U.S. 319 (1976). That test requires the Court to balance

> 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used" and "the probable value ... of additional ... safeguards;" and 3) "the Government's interest ... and ... burdens that the additional or substitute procedural requirement would entail."

*Axel J.M.C. v. Stanski*, No. CV 26-2281 (JRT/EMB), 2026 WL 1171344, at *3 (D. Minn. Apr. 29, 2026) (quoting *Mathews*, 424 U.S. at 335). The government asserts that the Eighth Circuit's decision in *Banyee v. Garland* forecloses the balancing test in *Mathews* and bars the relief sought here because, for immigration detainees held during removal proceedings, "*Zadvydas* and *Demore* have already done whatever balancing is necessary" and that, as a matter of law, the majority in *Demore* created "a bright-line rule[]: the government can detain an alien for as long as deportation proceedings are still pending." (Gov. Resp. 6–7, Dkt. No. 7); *Banyee v. Garland*, 115 F.4th 928, 931–933 (8th Cir. 2024); *Demore v. Kim*, 538 U.S.510, 523 (2003)).

Of the courts in this District to address this difference of approach, most have held that a Fifth Amendment challenge to mandatory detention is not foreclosed by *Banyee* and that the proper analysis of this issue still lies in the balancing test enumerated in *Mathews v. Eldridge*. *See Axel J.M.C. v. Stanski*, No. CV 26-2281 (JRT/EMB), 2026 WL 1171344, at *3 (D. Minn. Apr. 29, 2026); *Manuel G. v. Blanche*, No. 26-CV-2385 (SRN/ECW), 2026 WL 1256358, at *3 (D. Minn. May 7, 2026); *Jesus Alejandro G. A., v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *6 (D. Minn. May 18, 2026).

One case from this district has rejected this conclusion and agreed with the government that no balancing test is necessary and that those under mandatory immigration detention cannot challenge their detention under the Fifth Amendment. *See Brayam G.G. v. Bondi*, No. 26-cv-1985 (DMT/EMB), Dkt. No. 22 ¶ 8 (D. Minn. Apr. 15, 2026). If the Court applies the approach in *Brayam G.G.*, the analysis ends there, and the petition should be denied. However, the majority position in this District is to apply the three-part *Mathews* balancing test. *See e.g., Axel J.M.C. v. Stanski*, No. CV 26-2281 (JRT/EMB), 2026 WL 1171344, at *3 (D. Minn. Apr. 29, 2026) (quoting *Mathews*, 424 U.S. at 335).

This Court, like the majority in this district, finds that *Banyee* is distinguishable and does not foreclose the relief sought by Petitioner. The petitioner in *Banyee* was detained pursuant to 8 U.S.C. § 1226(c), which mandates detention for inadmissible or deportable "criminal aliens." *Banyee v. Garland*, 115 F.4th at 930 (8th Cir. 2024). In this case, by contrast, the government's asserted basis for detention is 8 U.S.C. § 1225(b)(2)(A), which, as other courts in this district have noted, differs from 1226(c) by not being undergirded by specific, categorical congressional judgments "about the dangerousness and flight risks posed by noncitizens convicted of certain enumerated offenses." *Axel J.M.C. v. Stanski*, No. 26-2281 (JRT/EMB), 2026 WL 1171344 *3 (D. Minn. Apr. 29, 2026) (citing *Orlando R.V.V. v. Blanche*, No. 26-1903 (MJD/SGE), Dkt. No. 11 at 7–10 (D. Minn. Apr. 28, 2026)). The Petitioner in this case has been known to the authorities since at least 2018, and perhaps since he entered the DACA program five years before that, in 2013. For some of the time he has been in the country, he has been protected from removal by the DACA program, and he is presently moving forward on two separate avenues for legal status,

either of which, if successful, will permit him to remain in the United States. The Court therefore finds that *Banyee* is not a bar to consideration of the relief sought by Petitioner here and turns to the three-part analysis of *Mathews v. Eldridge* to determine whether he is entitled to that relief.

As other courts in this district have found in similar cases, "Petitioner's private interest here is of paramount importance." *Id.*, at \*4 (D. Minn. Apr. 29, 2026). The deprivation of a person's physical liberty is the quintessential infringement of private interest, and that violation is only magnified when it is designed to facilitate the person's removal from the only country that person has known since infancy. The government dismisses this interest as simply "defined by statute" and limited by the fact that Petitioner may not be in the country legally. (Gov. Resp. 7, Dkt. No. 7.) The Court rejects this argument in full. The government has known that Petitioner has resided in this country illegally since 2018, at the latest, without removing him and, in fact, has taken official action to delay and defer action on his removal because it has recognized the interest that he has in continuing to live in this country and support his family. The first *Mathews* factor clearly favors Petitioner.

The second *Mathews* factor is a thornier one. There are two distinct interests at play here: 1) the Petitioner's interest in not being incarcerated pending his immigration proceedings; and 2) the Petitioner's interest in not being removed from the country. When evaluating a habeas petition, however, this Court looks only at the first. If the petitioner seeks judicial review of the decision to remove him from the country entirely, he must apply for review from the Eighth Circuit Court of Appeals, pursuant to 8 U.S.C. § 1252(b).

12

*See Skurtu v. Mukasey*, 552 F.3d 651, 655 (8th Cir. 2008) ("The REAL ID Act places exclusive review of orders of removal with circuit courts.") (quoting *Haider v. Gonzales*, 438 F.3d 902, 905 (8th Cir.2006). "However, these jurisdiction-stripping provisions 'do not eliminate habeas jurisdiction over all immigration-related detention claims,' and, as in *Aditya*, they do not apply to the claims that Ms. Aguilar Maldonado asserts here." *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (quoting *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704, No. 25-cv-1976 (KMM/JFD) (D. Minn. May 14, 2025). The Court passes no judgment on the merits of the government's case to remove Petitioner from the country.

When looking solely at the Petitioner's interest in not being incarcerated during his immigration proceedings, the Court finds that the second *Mathews* factor weighs in favor of granting the petition. As other courts in this district have found, "[t]here is at least some degree of risk of erroneous deprivation here, and an 'individualized bond hearing' at which both [Petitioner] and the Government can be heard on the issue of whether ongoing detention is appropriate 'would alleviate th[at] risk.'" *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (quoting *Abdirashid H. M. v. Noem*, No. 25-4779 (JRT/EMB), 2026 WL 127698, at *4 (D. Minn. Jan. 9, 2026). While "detention during removal proceedings is a 'constitutionally permissible part of the removal process,' … 'the government's authority to detain noncitizens is not limitless and should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing.'" *Id*. (quoting *Demore*, 538 U.S. at

13

531 (2003); *Zadvydas*, 533 U.S. at 690 (2001)). Petitioner is entitled to a bond hearing on these issues, where both he and the government can present argument to the immigration judge. This is especially true here, where the government allowed him to go about his everyday life for years during his immigration proceedings. The second *Mathews* factor favors granting the petition.

The Court also joins others in this district in finding that "an order compelling the government to provide Petitioner with a bond hearing would impose minimal, if any, financial or administrative burden on Respondents." *Abdirashid H. M. v. Noem*, No. 25-4779 (JRT/EMB), 2026 WL 127698, at *5 (D. Minn. Jan. 9, 2026). While the government has a substantial interest in removing deportable noncitizens and protecting the public, a bond hearing in this case would do no harm to those interests. *Jesus Alejandro G.A.*, at *12.

Applying the three-part balancing test enumerated in *Mathews*, the Court finds that the government's decision to deprive Petitioner of a bond hearing before holding him in civil detention during the pendency of his immigration proceedings violated his Fifth Amendment due process rights.

### III.    <u>CONCLUSION</u>

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the relief requested in Plaintiff's brief be **GRANTED in part and DENIED in part**, and that the government be ordered to provide him with a bond hearing within seven days or release him from custody. The Court notes the abbreviated timeline set forth below for filing objections and responses to any objections.

14

**Any objections to this Report & Recommendation are due by June 5, 2026. Responses to and such objections are due by June 12, 2026.**

Date: May 29, 2026

<u>s/ John F. Docherty</u>
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. **A party may file and serve specific written objections to these proposed findings and recommendations by Friday, June 5, 2026.**

**A party may respond to those objections by Friday, June 12, 2026.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

15